***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Dollar and the briefs and arguments of the parties. The appealing parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Dennis Insurance Group was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained a compensable injury on September 8, 2000, which was denoted as I.C. File No. 112215. At the time of the injury, giving rise to this claim, plaintiff's average weekly wage was $551.59, which yields a compensation rate of $367.75.
5. Plaintiff sustained a second compensable injury on November 16, 2000, which is denoted as I.C. File No. 108955. At the time of the injury, giving rise to this claim, plaintiff's average weekly wage was $536.62, which yields a compensation rate of $357.76.
6. The issues for determination are:
a. Is plaintiff entitled to temporary total disability compensation from May 26, 2002 (when he stopped working) until July 23, 2003 (when he underwent a second surgery and defendants restarted his indemnity benefits)?
b. Is plaintiff's depression a compensable condition?
c. Whether plaintiff's sexual dysfunction is related to the compensable injuries?
7. The parties stipulated the following documentary evidence into the record:
a. Contents of I.C. File No. 112215, 14 pages;
b. Contents of I.C. File No. 108955, 19 pages;
c. Commission Orders, four pages;
d. July 11, 2002 Opinion and Award;
e. Records of Dr. P.E. Brown, eight pages;
f. Records of Dr. David E. Peltzer, 20 pages;
g. Records of Dr. Peter D. Miller, 46 pages;
h. Records of Carolina Orthopaedic Specialists, 11 pages;
i. Records of Piedmont Therapy, 31 pages, and
j. Records of Emily T. Watts, R. N., six pages.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was a sixty-year old male long-distance truck driver and mechanic. He underwent prior L3-4 disc surgery in 1991.
2. Since October of 1997, Dr. David E. Peltzer of Newton Family Physicians began treating plaintiff for a history of low back pain, hernia, and depression. Plaintiff was on Zantac and Zoloft at that time. He reported a long history of depression due to his oldest son's drug, alcohol and prison issues. Dr. Peltzer continued the prescription for 50 mg. of Zoloft. On August 26, 1998, Dr. Peltzer increased the Zoloft to 100 mg. On November 8, 1999, Dr. Peltzer changed plaintiff to 37 ½ to 75 mg. of Effexor for depression due to the son returning home. Dr. Peltzer increased plaintiff's Effexor to 75 mg., as of December 6, 1999 due to increasing stressors related to his son. On December 27, 1999, plaintiff called Dr. Peltzer's office to report the Effexor made him too sleepy to drive his truck. He requested Zoloft, and Dr. Peltzer prescribed 100 mg. of Zoloft for the depression.
3. Since February 22, 2000, Dr. Peltzer has treated plaintiff for erectile dysfunction, for which six samples of Viagra were provided. In September of 2000, Dr. Peltzer prescribed additional Zoloft and gave plaintiff more Viagra samples. In April of 2001, Dr. Peltzer prescribed additional Zoloft for depression.
4. Following the compensable injuries of September 8, 2000 and November 16, 2000, plaintiff underwent a functional capacity evaluation (FCE) on April 19, 2001, after which neurosurgeon Dr. Peter D. Miller restricted him to no climbing ladders, no work in the cold and wet, and no lifting over twenty-five pounds. The defendant-employer did not have work available within these restrictions, so plaintiff found work with Bruards Furniture as a dispatcher.
5. Plaintiff began working on April 16, 2001 at Bruards. However, as the dispatcher decided not to retire, plaintiff was assigned to work as an outside truck mechanic. Plaintiff performed the duties assigned, even though they were not within his restrictions.
6. By June of 2001, Dr. Peltzer prescribed Xanax for plaintiff's depression. On August 21, 2001, Dr. Peltzer refilled the Viagra prescription.
7. On October 25, 2001, Dr. Miller performed a right L3-4 hemilaminectomy and discectomy with partial facetectomy. He remained out of work from the date of the surgery until January 14, 2002, at which time Dr. Miller authorized him to return to work with no lifting over twenty-five pounds. Following the surgery, plaintiff had temporary relief from right leg pain.
8. On January 24, 2002, plaintiff returned to Dr. Miller, reporting a couple of episodes of right leg spasms for which Dr. Miller prescribed Flexeril. Despite these new symptoms, Dr. Miller released plaintiff to all activities. Between January 24, 2002 and May 14, 2003, no physician authorized plaintiff to be out of work.
9. Plaintiff returned to Dr. Miller on March 20, 2002, reporting significant back and right leg pain. Nevertheless, Dr. Miller found plaintiff had reached maximum medical improvement and rated him as retaining a fifteen percent permanent partial impairment as a result of the compensable injuries. Defendants have paid for the initial impairment rating, in accordance with the provisions of Deputy Commissioner Dollar's Opinion and Award.
10. On May 24, 2002, plaintiff terminated his employment with Bruards Furniture. In his resignation letter, he noted he was leaving because he had never been provided the dispatcher job for which he had originally been hired to perform. He has not sought any work since leaving Bruards.
11. Plaintiff did not see Dr. Miller between March 20, 2002 and May 8, 2003. However, he did telephone Dr. Miller's office on at least five occasions to request pain medications, which Dr. Miller prescribed.
12. On January 31, 2003 plaintiff called Dr. Miller and requested an office visit. Plaintiff was prescribed additional medication.
13. On February 20, 2003, Dr. Miller ordered additional diagnostic studies, including an MRI and diskogram, which indicated scar tissue formation and a collapse of the disc space at L3-4. At the 8 May 2003 follow-up appointment, Dr. Miller recommended an L3-4, L4-5 posterior lumbar interbody fusion with BAK cages, as a direct result of the prior injuries and a further deterioration of his condition.
14. Dr. Miller provided a note on May 14, 2003, which indicated plaintiff was unable to work pending surgery. He further noted plaintiff ceased work on May 26, 2002 after no sedentary work was provided.
15. On July 23, 2003, Dr. Miller performed the L3-4, L4-5 fusion. Dr. Miller has opined, and the Full Commission finds as fact, this fusion surgery was causally related to the original compensable injuries.
16. Plaintiff's sexual dysfunction was most likely due to multifactoral causes, including his smoking, use of Zoloft and the 1991 back surgery/injury.
17. Following the July 23, 2003 fusion surgery, plaintiff suffered an anxiety attack, as a result of which Dr. Miller recommended treatment with Dr. Peltzer. However, Dr. Peltzer did not see plaintiff at that time and as such, he had no opinion regarding this episode.
18. By October 30, 2003, Dr. Miller ordered work hardening. However, plaintiff was unable to complete it. As of January 5, 2004, Dr. Miller has referred plaintiff to a pain clinic.
19. At some time prior to October 31, 2003, plaintiff applied for Social Security disability, after Dr. Miller informed him he would not be able to return to truck driving.
20. Plaintiff's pre-existing depression was not causally related to the 2000 low back injuries. While he may have had occasional episodes of aggravation of his depression after the 2003 fusion surgery, the competent evidence in the record supports a finding he did not seek any treatment for these episodes. The anxiety episode plaintiff described which occurred on or about July 24, 2003 was not causally related to the 2000 low back injuries. As Dr. Peltzer was unaware of the incident at the time of his deposition in this case, the episode was not significant enough for plaintiff to have ever reported to his treating physician.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and the extent of disability. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). In the instant case, plaintiff failed to carry the burden of proof to establish by competent medical evidence that he was disabled from work, within the meaning of the Act, between May 26, 2002, when he voluntarily resigned from his employment, and January 31, 2003.
2. As a direct result of the prior injuries and further deterioration of his condition plaintiff has been totally disabled since January 31, 2003. He is entitled to compensation at the rate of $357.76 per week from January 31, 2003 until July 23, 2003 when defendants began paying his indemnity benefits. N.C. Gen. Stat. § 97-29.
3. Plaintiff has failed to carry the burden of proof to establish by competent medical evidence that his pre-existing depression is causally related to the compensable injuries. N.C. Gen. Stat. § 97-2(6).
4. Plaintiff has failed to prove by competent medical evidence that his sexual dysfunction is causally related to the compensable injuries. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for temporary total disability benefits from May 26, 2002 until January 31, 2003 is, and under the law must be, DENIED.
2. Subject to attorney's fees hereinafter approved, defendants shall pay plaintiff total disability payments in the amount of $357.76 per week for the period of January 31, 2003 until July 23, 2003.
3. Plaintiff's claims for medical treatment of his sexual dysfunction and depression are, and under the law must be, DENIED.
4. An attorney's fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiff's counsel. This fee shall be deducted from the compensation awarded to plaintiff and paid directly to counsel for plaintiff.
5. Defendants shall pay the costs of this action.
This the 27th day of April 2005.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DCS/llc